# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ANGELICA POLANCO,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>PRUCO LIFE INSURANCE COMPANY, a corporation; WILLIAM A. FORTNER; HEATHER FORTNER; and MOUNTAIN WEST INSURANCE & FINANCIAL SERVICES, LLC, a limited liability company.<br><br>　　　　　　　　Defendants. | **CASE NO. 1:22-cv-765** |

## PRUCO LIFE INSURANCE COMPANY'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a) and (b), Defendant Pruco Life Insurance Company ("Pruco"), by and through its undersigned attorneys, hereby removes the above-entitled action, currently pending in the First Judicial District Court, County of Santa Fe, State of New Mexico, to the United States District Court for the District of New Mexico.  In doing so, Pruco expressly reserves all defenses and objections. As grounds for removal, Pruco states as follows:

## NATURE OF THE CASE

1.　On or about April 14, 2022, Plaintiff Angelica Polanco ("Plaintiff") filed this lawsuit against Pruco (the "Action") in the New Mexico First Judicial District Court, County of Santa Fe, entitled *Angelica Polanco  v. Pruco Life Insurance Company*, et al., Case No. D-101-CV-2022-00645 (the "Complaint").  Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of

Plaintiff's Complaint and all process and pleadings with which Pruco has been served in the Action are attached collectively as **Exhibit A**.

2. The First Amended Complaint alleges that Bernardo Polanco (the "Decedent") was insured under a life insurance policy (the "Policy") issued by Pruco Life Insurance Company and that Plaintiff is the designated beneficiary under the Policy. (Compl., ¶ 1-2.) Defendants William A. Fortner and Heather Fortner ("the Agents") were employees of Defendant Mountain West Insurance & Financial Services, LLC ("Mountain West" or "the Agency"), an insurance brokerage which holds appointments to sell insurance sold by Pruco and other insurers, and the Agency's Agents were allegedly authorized to sell and deliver the Policy to Plaintiff in San Juan County, New Mexico. (Compl., ¶ 2-5.) Plaintiff further alleges that the Decedent died on January 28, 2022 and that Pruco acted in bad faith and breached the Policy by acting on the Agents' alleged request to withdraw the reinstatement of the Policy, and deny Plaintiff payment on the policy. (Compl., ¶ 13, 15.) Specifically, Plaintiff alleges that the Agents had no authority to request a "withdrawal of reinstatement" of the Policy, and Pruco and the Agents had no right and were not permitted to do so. (Compl., ¶ 16, 17.)

3. Plaintiff asserts the following causes of action: Count 1: Breach of Contract against Pruco; Count 2: Breach of the Duty of Good Faith and Fair Dealing against Pruco; Count 3: New Mexico Common Law Insurance Bad Faith against Pruco; Count 4: Violation of the Unfair Insurance Practices Act against Pruco; Count 5: Violation of the Unfair Practices Act against all Defendants: Count 6: Claim Against the Agents for Tortious Interference with Contractual Relations; Count 7: Negligence Against Pruco; and Count 8: Negligence and Gross Negligence Against the Agents. (Compl., pp. 8-17.)

4. Accordingly, Plaintiff seeks to recover, from each Defendant, compensatory, actual, and special damages, all available damages pursuant to UJI 13-1712, 13-1713, 13-1716,

13-1717, and 13-1718 NMRA, punitive damages, attorneys' fees and costs, and pre- judgment interest. (Compl., p 17.)

## REMOVAL IS TIMELY

5. Pruco received service of process via certified mail with a copy of its Complaint on April 21, 2022.

6. A defendant initially has thirty (30) days from the date of service with a summons and complaint to remove an action to federal court. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). However, a second 30-day period is trigged pursuant to 28 U.S.C. § 1446(b)(3) upon service or otherwise, of a copy of an amended pleading, motion, order or "other paper from which it may first be ascertained that the case is one which is or has become removable." *See also Paros Properties LLC v. Colorado Cas. Ins. Co.*, 835 F.3d 1264, 1271 (10th Cir. 2016) (citing 28 U.S.C. § 1446(b)(3)); *see Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 1013 (D.N.M. 2016); *see also Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999) (plaintiff's deposition testimony triggered removal period).

7. Moreover, in cases involving fraudulent joinder of parties (as discussed in further detail below), the 30-day removal period runs only from the time defendant first knew or should have known that the nondiverse party had been "fraudulently" joined, and that there is a basis for removal absent such joinder. *Jernigan v. Ashland Oil Inc.*, (5th Cir. 1993) 989 F2d 812, 817; *Delaney v. Viking Freight, Inc.*, (ED TX 1999) 41 F.Supp.2d 672, 675-676 (removal clock began to run when defendant received deposition transcript containing admissions showing no claim could be maintained against codefendant).

8. This notice of removal is timely. Pruco is filing this notice following Plaintiff's discovery responses to the Agents, the Agency, and Pruco. Pruco received written discovery responses on September 28, 2022, and the Agents and the Agency received written discovery

responses on October 5, 2022. Pursuant to 28 U.S.C. § 1446(b), this notice of removal is timely filed within thirty (30) days of the receipt of Plaintiff's discovery responses, from which, as discussed below, Pruco first ascertained that the Agents and the Agency had been fraudulently joined.

9. As discussed more fully below, the Agents and the Agency have been fraudulently joined to this action, so their consent to removal is not required. *Hewitt v. City of Stanton*, 798 F.2d 1230 (9th Cir. 1986) (fraudulently joined defendants are not required to concur in removal); Moore's Federal Practice § 107.11(1)(d); *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009).

## VENUE IS PROPER

10. Venue is proper under 28 U.S.C. § 1441(a) because the United States District Court for the District of New Mexico embraces the court in which Plaintiffs filed this action—the First Judicial District Court, County of Santa Fe, State of New Mexico.

## COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

**A. There is Diversity Between the Properly Joined Parties**

11. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

12. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because (1) the amount in controversy exceeds $75,000 because the Plaintiff's Complaint seeks damages in excess of $75,000, exclusive of interest and costs, and (2) there is complete diversity between Plaintiff and Pruco because they are citizens of different states. 28 U.S.C. §§ 1332(a), 1441.

13. For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

14. Plaintiff is and was, at the time of the filing of the Complaint and the filing of this removal, a resident of San Juan County, New Mexico. (Compl., ¶ 1.) Therefore, Plaintiff is a New Mexico citizen for diversity purposes.

15. Pruco is and was, at the time of filing of the Complaint and the filing of this removal, a corporation incorporated under the laws of the State of Arizona with its principal place of business in Newark, New Jersey. (Compl., ¶ 1.) Therefore, Pruco is a citizen of both Arizona and New Jersey for diversity purposes.

16. As Plaintiff is a New Mexico citizen and Pruco is an Arizona and New Jersey citizen, the parties in this action are diverse.

B. **The Amount in Controversy Requirement is Met**

17. To meet the 28 U.S.C. § 1332(a) amount in controversy threshold, Plaintiff must allege damages in excess of $75,000 at the time of removal.

18. New Mexico's Rules of Civil Procedure direct parties to not plead "any specific monetary amount" for damages, unless such an allegation is necessary. Rule 1-008(A)(3) NMRA. However, Pruco may establish the amount in controversy through, among other methods, "contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations; . . . or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *Esquibel-Mead v. Am. Gen. Life Ins. Co.*, No. 1:21-cv-00365-PJK-JHR, 2021 U.S. Dist. LEXIS 103500, *5 (D.N.M. June 1, 2021) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008)). Moreover, where the state court complaint is silent on the amount of damages, "the defendant's burden [for establishing the amount in controversy] is only a

preponderance of the evidence." *Cordova v. Jmic Life Ins. Co.*, No. CIV 03-796 BB/RHS, 2003 U.S. Dist. LEXIS 30446, *2 (D.N.M. Sept. 2, 2003).

19. Plaintiff's Complaint is silent as to the total amount in controversy, but seeks judgment for compensatory and punitive damages, including attorney's fees and costs. It is facially apparent from Plaintiff's Complaint that, while Pruco disputes Plaintiff's allegations and denies liability as to Plaintiff's claims, the amount in controversy exceeds $75,000, exclusive of interest and costs. *See Pierce v. Atl. Specialty Ins. Co.*, No. 16-829 JAP/KBM, 2017 U.S. Dist. LEXIS 141871, *8 (Sept.1, 2017) (finding that, although the complaint did not set forth a specific amount in controversy, the "claims for awards of compensatory and punitive damages, treble damages under the Unfair Practices Act, and statutory attorney's fees . . . sufficiently informed a defendant that the jurisdictional minimum for diversity jurisdiction could have been satisfied").

20. Plaintiff's Complaint puts at issue the amount of life insurance benefits Pruco supposedly wrongfully refused to pay to Plaintiff. (Compl., ¶¶ 24-25, 30, 37, 39-40, 46(c)-(d), 51(a)). As set forth in the Decedent's Policy, a true and correct copy of which is attached hereto as **Exhibit B**, the death benefit under the Decedent's Policy was $1,000,000. (Policy, at 3.) If Plaintiff prevails on her breach of contract theory, the amount in controversy for the life insurance benefits component alone would be $1,000,000.

21. "Punitive damages may be considered in determining the requisite jurisdictional amount." *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). Here, Plaintiff has expressly sought punitive damages. (Compl., p. 17.) Pruco certainly does not concede that Plaintiff is entitled to such damages. However, viewing Plaintiff's Complaint as pled, which is the standard for removal analysis, those damages should be included for purposes of determining the amount in controversy.

22. The United States District Court for the District of New Mexico has awarded punitive damages equivalent to one-half of the compensatory damages. *See Mendoza v. Amador*, No. 2:19-cv-01171-KWR-GJF, 2020 U.S. Dist. LEXIS 180105, *11 (D.N.M. Sept. 29, 2020). Courts within the Tenth Circuit have awarded punitive damages based on a six to one ratio. *See, e.g., Leon v. FedEx Ground Package Sys., Inc*., 313 F.R.D. 615, 632 (D.N.M. 2016) (citations omitted).

23. Even just calculating the punitive damages as one-half of the compensatory damages—*i.e.,* as was awarded in *Mendoza*—the amount in controversy is well over $500,000.

24. Moreover, Plaintiff seeks treble damages under the Unfair Practices Act, which, like punitive damages, should also be considered when calculating the amount in controversy. *See Two Old Hippies, LLC v. Catch the Bus, LLC*, 807 F. Supp. 2d 1059, 1077 (D.N.M. Aug. 18, 2011) (stating that treble damages are "a form of punitive damages").

25. If the defendant is found to have willfully violated the Unfair Practices Act, the court may award up to three times the actual damages. NMSA 1978 § 57-12-10(B). Accordingly, if the court were to award the maximum amount of treble damages under the Unfair Practices Act, the amount in controversy would exceed $3 million.

26. In addition, Plaintiff has specifically demanded attorneys' fees. (*See* Compl., p. 17.)

27. Attorneys' fees, where specifically permitted by statute, may also be considered as part of the amount-in-controversy for purposes of federal jurisdiction. *Martinez-Wechsler v. Safeco Ins. Co. of Am.*, No. CIV 12-0738 KBM/ACT, 2012 WL 12892762, *2 (D.N.M. Sept. 13, 2012); *see also Woodmen,* 342 F.3d at 1218 ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount.").

28. Here, as in *Woodmen,* the Unfair Practices Act, which Plaintiff asserts as a cause of action, allows for the recovery of attorneys' fees. NMSA 1978 § 57-12-10(C) ("The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails.").

29. Here, Plaintiff's claim for attorneys' fees increases the amount in controversy even further over the $75,000 threshold. Again, Pruco certainly does not concede such fees or damages would be justified or reasonable, but they are properly considered for purposes of the amount in controversy analysis.

### C. Defendants Bill Fortner and Heather Fortner and Mountain West Insurance Were Fraudulently Joined

#### i. The Court May Pierce the Pleadings to Examine the Entire Record

30. A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. *Schmidt v. Int'l Playthings LLC*, 503 F. Supp. 3d 1060, 1089 (D.N.M. 2020). A fraudulent joinder analysis for removal purposes is a jurisdictional inquiry and, thus, a district court should pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available. *Id.* A party asserting fraudulent joinder when removing an action to federal court bears the burden of proof to show joinder is fraudulent. *Id*.

31. To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts; or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Id*. at 1090. Stated differently, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that there is no possibility that the plaintiff would be able to establish a cause of action or obtain judgment against the party alleged to be fraudulently joined. *Id.* at 1091-92. Pruco meets that burden here, as discussed below.

32.  The Court in *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir.2013) quotes a Fifth Circuit opinion that provides instructive language: "[T]he test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an instate defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d at 249 (internal citations omitted) (emphasis in original).

      **ii.  The Evidence Establishes that Mr. Polanco Was Repeatedly Notified of His Policy Lapse, and that the Policy Remained Lapsed at the Time of Mr. Polanco's Death**

33.  Here, the evidence establishes that Pruco repeatedly notified Mr. Polanco of the Policy lapse and reinstatement, and that Mr. Polanco had passed away while the Policy remained lapsed, thereby precluding coverage under the Policy.

34.  On September 28, 2021, Pruco sent Mr. Polanco a letter advising that the Policy had lapsed, but that Mr. Polanco could reinstate the Policy (without having to answer health questions and prove insurability) by sending the past due premium ($4,625.00) by October 20, 2021. (See Declaration of Joshua Haevernick, "Haevernick Decl.," ¶ 3, Exhibit B, filed concurrently herewith.)

35.  On October 21, 2021, Pruco sent another letter to Mr. Polanco advising that the Policy had lapsed for nonpayment of premium due August 19, 2021, and that Mr. Polanco could apply to reinstate the Policy, but would be required to prove he was still insurable, undergo medical examination and underwriting, and prove insurability. (See Haevernick Decl., ¶ 3, Exhibit C.)

36.  In December 2021, months after the Policy had *already lapsed* for non-payment, and months after the grace period had passed, Plaintiff allegedly contacted Ms. Fortner regarding

the payment due date on the Policy, and Ms. Fortner informed Plaintiff that the payment was overdue. (See Haevernick Decl., ¶ 9, Exhibit L at pp. 10-11 [Plaintiff's Response to Mountain West's Interrogatory no. 4].) Plaintiff allegedly asked Heather to contact Prudential in order to send the payment, and Heather said she would do so and get back to Plaintiff with a response. (*Id.*)

37. On January 4, 2022, Pruco sent Mr. Polanco another letter advising that Mr. Polanco had no insurance coverage under the Policy, and that to apply for reinstatement, Mr. Polanco must send a payment of $4,625.00 by January 25, 2022, along with the completed reinstatement application. The letter further advised that Pruco may require a medical examination as part of the reinstatement review process. (See Haevernick Decl., ¶ 3, Exhibit D.)

38. On January 11, 2022, Ms. Fortner sent Plaintiff the January 4th renewal letter from Pruco to Plaintiff, noting in her email to Plaintiff to "...read the deadlines." (See Haevernick Decl., ¶ 9, Exhibit L at p. 3 [Plaintiff's Response to Mountain West's Interrogatory no. 1].) Plaintiff thereafter paid the policy premium and mailed the reinstatement form. (*Id.*)

39. On January 21, 2022, four months after the Policy had lapsed, Pruco received the overdue premium check for $4,625 and Mr. Polanco's reinstatement application. (Compl., ¶ 11.)

40. On January 25, 2022, Pruco sent another letter to Mr. Polanco confirming receipt of the application and payment listed above, and advising that Pruco would review Mr. Polanco's application for reinstatement and contact Mr. Polanco if any additional information was needed. (See Haevernick Decl., ¶ 3, Exhibit E.) The letter explicitly stated that, "***This policy will remain lapsed during the review process***." (*Id.*)

41. Mr. Polanco died three days later. (Compl., ¶ 3, 12). On February 16, 2022, Plaintiff spoke with a representative of the Agency asking for Pruco to stop calling Mr. Polanco's cell phone about setting up an appointment for his medical exam for the reinstatement of the Policy, because Mr. Polanco had passed away. (See Haevernick Decl., ¶ 5, Exhibit H, at p.

10 [Response to Interrogatory no. 12]). That same day, Heather Fortner similarly called Prudential and requested that underwriting stop calling to schedule bloodwork and exams, as Mr. Polanco had died during the reinstatement process. (See Haevernick Decl., ¶ 5, Exhibit H at p. 10 [Response to Interrogatory no. 12]; ¶ 4, Exhibit G.)

42. On February 18, 2022 Prudential sent a letter advising that they had withdrawn the reinstatement of the Policy, and would return the check in the amount of $4,625.00. (Compl., ¶ 14; see Haevernick Decl., ¶ 3, Exhibit F.)

43. Simply put, the Policy was lapsed when Mr. Polanco died, so there is no coverage under the Policy as a matter of law.

### iii. Plaintiff Cannot Establish a Cause of Action Against the Agents or the Agency for Tortious Interference

44. Plaintiff alleges three causes of action against the Agents: violation of the Unfair Practices Act, tortious interference with contractual relations, and negligence and gross negligence. (Compl., ¶¶ 50-60, 64-66.)

45. Under New Mexico law, a plaintiff must prove the following five (5) elements to successfully make a claim for tortious interference with contractual relations: "(1) the defendant had knowledge of the contract; (2) the plaintiff was unable to fulfill the contract's obligations; (3) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of the contract; (4) the plaintiff suffered damages resulting from the breach; and (5) the defendant induced the breach without justification or privilege to do so." *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 40, 282 P.3d 758, 767.

46. To support their claim against the Agents for tortious interference with contractual relations, Plaintiff alleges in the Complaint that the Agents "intentionally interfered"

with Plaintiff's contractual relationship with Pruco by requesting that Pruco "withdraw the reinstatement of the policy." (Compl., ¶¶ 57-58). The Complaint alleges that the Agents did this "intentionally, recklessly, willfully, and with malice aforethought." (Compl., ¶ 59.)

47.     In her October 5, 2022 responses to Mountain West's written discovery, Plaintiff attempts to bolster her tortious interference claim by stating that the Agency "acted to interfere with and purported to cancel the reinstatement" by requesting withdrawal of reinstatement, yet admits that she "has not seen any correspondence from Mr. Fortner to Pruco requesting said withdrawal." (See Haevernick Decl., ¶ 9, Exhibit L at pp. 7-8 [Plaintiff's Response to Mountain West's Interrogatory no. 2].)

48.     However, contrary to what is alleged in the Complaint, and as discussed above, the Agents never explicitly requested withdrawal of reinstatement, and (per Plaintiff's instruction) only asked that Pruco's underwriters stop calling to schedule the lab tests and exams *after* Mr. Polanco's death. (See Haevernick Decl., ¶ 5, Exhibit H, at p. 10 [Response to Interrogatory no. 12]; ¶ 6, Exhibit I, at p. 3 [Response to Interrogatory No. 25]; ¶ 2, Exhibit A, at p. 23 [Response to Interrogatory No. 13]).)

49.     Moreover, any alleged communication between Plaintiff and the Agents or Pruco after Mr. Polanco's death is legally immaterial and inconsequential. Plaintiff would not be entitled to death benefits regardless of what communications may have occurred between Plaintiff, the Agents, and Pruco after the death of Mr. Polanco, as the Policy was lapsed and had not been reinstated. Thus, any dispute regarding what Plaintiff did or did not tell the Agents to tell Pruco concerning withdrawal of reinstatement is immaterial—it does not and cannot change the fact that Mr. Polanco had passed away while the Policy was lapsed, which by itself precluded

reinstatement irrespective of whether the Agents had requested withdrawal of the reinstatement request. In short, any such disagreement could not plausibly support recovery on the claims against the Agents, even if Plaintiff's claims were truthful, as they did not cause Plaintiff any harm because Mr. Polanco had already passed away.

### iv. Plaintiff Cannot Establish a Cause of Action Against the Agents or the Agency for Negligence or Gross Negligence

50.     Plaintiff also alleges that the Agents were negligent or grossly negligent. Under New Mexico law, "A negligence claim requires that the plaintiff establish four elements: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 22. Moreover, "[g]rossly negligent conduct is an act or omission done without the exercise of even slight care under the circumstances." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, fn. 1.

51.     In support of their claim against the Agents for negligence and gross negligence, Plaintiff alleges in the Complaint that the Agents breached their duty to exercise reasonable care in communicating with the Polancos regarding the Policy and benefits thereunder by "failing to communicate with the Polancos and stay informed and keep them informed about the status of premium payments and reinstatement rights under the Policy and communicating all of such matters to Plaintiff, and by requesting that Pruco should 'withdraw the reinstatement of the policy.'" (Compl., ¶¶ 63-65.) To support their claim for gross negligence, Plaintiff merely offers the conclusory allegation that "the Agents were grossly negligent." (Compl., ¶ 65.)

52.     In her October 5, 2022 responses to Mountain West's written discovery, Plaintiff attempts to support her negligence/gross negligence claim by alleging that the Agency "breached

their duties of ordinary care and their fiduciary duties owed to the Polancos by failing to timely and reasonably inform the Polancos that the policy had lapsed, that it could be reinstated, and that the terms of the reinstatement would change after a certain period of time." (See Haevernick Decl., ¶ 9, Exhibit L at pp.9 [Plaintiff's Response to Mountain West's Interrogatory no. 3].) Plaintiff further alleges that the Agents breached their duties "by representing to Pruco that the Polancos had requested that the reinstatement be withdrawn, by failing to disclose to Pruco that the Polancos had not made such a request, and by allowing Pruco to purport to withdraw the reinstatement on that basis." (*Id*. at p. 10.)

53. However, as discussed above, the evidence shows that all lapse and reinstatement notifications were sent *directly* to Bernardo Polanco, including: the September 28, 2021 Notice of Lapse (PRU0000097-100); the October 21, 2021 Notice of Lapse (PRU0000095-96); the January 4, 2022 letter regarding application for reinstatement (PRU0000286-87); the January 25, 2022 letter regarding receipt of application for reinstatement (PRU0000228); and the February 18, 2022 letter regarding withdrawal or reinstatement of policy (PRU0000229). (See Haevernick Decl., ¶ 3, Exhibits B-F.) Moreover, Plaintiff readily concedes that on January 11, 2022 the Agency sent her the January 4th letter from Pruco regarding reinstatement. (See Haevernick Decl., ¶ 9, Exhibit L at p. 3 [Plaintiff's Response to Mountain West's Interrogatory no. 1(b)].) As such, Plaintiff's allegations that Agents somehow failed to communicate with the Polancos about the status of premium payments and reinstatement rights under the Policy are likewise legally inconsequential, as it is abundantly clear that such information was communicated *directly* to the Polancos.

54. Moreover, as discussed above, the Agents did not wrongfully request that Pruco withdraw the reinstatement of the policy, and (per Plaintiff's instruction) only asked that Pruco's underwriters stop calling to schedule the lab tests and exams *after* Mr. Polanco's death. (See Haevernick Decl., ¶ 5, Exhibit H, at p. 10 [Response to Interrogatory no. 12]; ¶ 6, Exhibit I, at p. 3 [Response to Interrogatory No. 25]; ¶ 2, Exhibit A, at p. 23 [Response to Interrogatory No. 13]).) Again, given that Mr. Polanco passed away while the Policy was lapsed, any alleged communications following Mr. Polanco's death are legally inconsequential.

55. Plaintiff admits as much, stating that "she believed that the Agents would notify … that Mr. Polanco had passed away in order to stop the phone calls [re: the medical exams], which were incredibly hurtful and distressing to the Plaintiff so soon *after the death of her husband.*" (See Haevernick Decl., ¶ 9, Exhibit L at p. 11 [Plaintiff's Response to Mountain West's Interrogatory no. 4(c)].) (Emphasis added.)

### v. Plaintiff Cannot Establish a Cause of Action Against the Agents or the Agency for Violation of the Unfair Practices Act

56. The Complaint alleges subsections A, B, C, D, E, I, J and N of N. M. S. A. 1978, § 59A-16-20 were violated. Per N. M. S. A. 1978, § 59A-16-20:

> Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:
>
> A. misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;
>
> B. failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
>
> C. failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

>D. failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;
>
>E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;
>
>I. attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;
>
>J. failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;
>
>N. failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

57. In support of their claim against the Agents for violation of the Unfair Practices Act, Plaintiff alleges in the Complaint that the Agents "negligently or willfully violated the Act" by, *inter alia*, requesting withdrawal of reinstatement, misrepresenting the right to withdraw the reinstatement, misrepresenting that the Policy had been withdraw, and misrepresenting that the Polanco's lacked covered under the Policy. (Compl., ¶ 51.)

58. In their recent responses to Mountain West's Interrogatories, Plaintiff states "the Agents "violated the Unfair Practices Act by giving statements that were false or misleading, and failing to disclose material facts reasonably necessary to prevent their statements concerning coverage from being misleading" and that "the Agents held themselves out as specialists in providing insurance and financial advice and incurred duties greater than those owed by ordinary insurance agents….[including] a duty to prevent their advice from being materially incomplete or misleading." (See Haevernick Decl., ¶ 9, Exhibit L at p. 2 [Plaintiff's Response to Mountain West's Interrogatory no. 1(a)].) Plaintiff again alleges the Agents "violated the Unfair Practices

Act by making or purporting to make a request that the reinstatement be withdrawn that was not authorized by Plaintiff." (See Haevernick Decl., ¶ 9, Exhibit L at p. 3 [Plaintiff's Response to Mountain West's Interrogatory no. 1(b)].)

59. Here, as discussed above, Plaintiff's claim against the Agents for violation of the Unfair Practices Act must fail, as: 1) the evidence shows that all lapse and reinstatement notifications were sent *directly* to Bernardo Polanco (See Haevernick Decl., ¶ 3, Exhibits B-F.); 2) the Agents did not wrongfully request that Pruco withdraw the reinstatement of the policy, and (per Plaintiff's instruction) only asked that Pruco's underwriters stop calling to schedule the lab tests and exams *after* Mr. Polanco's death. (See Haevernick Decl., ¶ 5, Exhibit H, at p. 10 [Response to Interrogatory no. 12]; ¶ 6, Exhibit I, at p. 3 [Response to Interrogatory No. 25]; ¶ 2, Exhibit A, at p. 23 [Response to Interrogatory No. 13]).); and 3) given that Mr. Polanco passed away while the Policy was lapsed, any alleged communications following Mr. Polanco's death are legally inconsequential.

60. The facts of the case are clear that there is no basis for the claims of tortious interference with contractual relations, gross negligence, or violation of the Unfair Practices Act against Defendants Bill Fortner, Heather Fortner, and Mountain West Insurance. Pruco sent Policy lapse and reinstatement notification letters directly to the Polancos. When Ms. Fortner placed a follow-up call to Pruco in February, it was merely to advise Pruco that she was still receiving many calls to set up medical examinations for Bernardo Polanco, and that she requested those calls stop since he had passed away.

61. Plaintiff would not be entitled to death benefits regardless of what communications may have occurred between Plaintiff, the Agents, and Pruco after the death of

Mr. Polanco, as the Policy was lapsed and had not been reinstated. As such, any alleged post-death communication is legally inconsequential. Again, any dispute regarding the Agents' alleged withdrawal request is a legal "red herring" that Plaintiff spins to break up diversity jurisdiction, but it cannot plausibly support recovery on the claims against the Agents, even if Plaintiff's claims are accepted as true.

62.     Removal is therefore proper because Defendants Bill Fortner, Heather Fortner, and Mountain West Insurance were fraudulently joined, and their New Mexico citizenship cannot defeat diversity jurisdiction. Plaintiff cannot establish a cause of action against the Agents or Agency in state court. *Dutcher*, 733 F.3d at 988. Accordingly, based on the foregoing, complete diversity is established because Plaintiff is a citizen of the state of New Mexico, Pruco is incorporated in Arizona and its principal place of business in in New Jersey, and, the citizenship of the Agents and the Agency should be disregarded. This court has jurisdiction over the case based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).

## NOTICE TO PLAINTIFF AND STATE DISTRICT COURT

63.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the District of New Mexico, and pursuant to 28 U.S.C. § 1446(d), written notice of this filing and any attendant supplementary papers required by this Court will be given to Plaintiff, and a copy of the Notice of Removal will be filed with the Clerk of the Court for the First Judicial District Court, County of Santa Fe, State of New Mexico.

## CONCLUSION

64.     Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over this action under 28 U.S.C. §§ 1441 and 1446 because, for the reasons set forth above, the amount in controversy

exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity between Plaintiff and Pruco who are citizens of different states.

65.   Pruco, by filing this Notice of Removal, does not waive any defenses or objections available to it under the law. Pruco reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Pruco requests that the above-captioned action pending in the New Mexico First Judicial District Court, County of Santa Fe, Case No. D-101-CV-2021-02616, be removed to this Court.

Respectfully submitted,

**MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

By: */s/ Kevin D. Pierce*
    Kevin D. Pierce (kdp@modrall.com)
    Melissa M. Kountz (mkountz@modrall.com)
    500 Fourth Street NW, Suite 1000
    P. O. Box 2168
    Albuquerque, NM 87103-2168
    (505) 848-1800
    Fax (505) 848-9710

    AND

**DENTONS US LLP**
    Andrew S. Azarmi, *pro hac vice*
    Joshua Haevernick, *pro hac vice*
    1999 Harrison Street, Suite 1300
    Oakland, CA 94612
    Telephone: 415.267.4000
    Facsimile: 415.267.4198

*Attorneys for Defendant PRUCO LIFE INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2022, I electronically filed **PRUCO LIFE INSURANCE COMPANY'S NOTICE OF REMOVAL** with the Clerk of Court using the CM/ECF system. I caused a copy of the **PRUCO LIFE INSURANCE COMPANY'S NOTICE OF REMOVAL** to be sent via E-Mail to the following:

Clifford K. Atkinson
Justin D. Rodriguez
Julia E. McFall
Atkinson, Baker & Rodriguez, P.C.
201 Third Street NW, Suite 1850
Albuquerque, New Mexico 87102
catkinson@abrfirm.com
jrodriguez@abrfirm.com
jmcfall@abrfirm.com
*Attorneys for Plaintiff*

Henry Narvaez
Narvaez Law Firm, P.A.
601 Rio Grande Blvd NW
Albuquerque, New Mexico 87104
hnarvaez@narvaezlawfirm.com
*Attorneys for Agency Defendants*

**MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

By:  */s/ Kevin D. Pierce*
      Kevin D. Pierce

W4524459.DOCX